1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   IAN MITCHINSON, individually and on          No.  1:15-cv-01474-DAD-BAM
     behalf of all others similarly situated,
12
                    Plaintiff,
13                                                 ORDER GRANTING PLAINTIFF'S MOTION
          v.                                       FOR PRELIMINARY APPROVAL OF
14                                                 CLASS ACTION SETTLEMENT AND
     LOVE'S TRAVEL STOPS & COUNTRY                 PRELIMINARY CLASS CERTIFICATION
15   STORES, INC., an Oklahoma corporation,
     and LOVE'S COUNTRY STORES OF                  (Doc. No. 29.)
16   CALIFORNIA, a California corporation,

17                  Defendants.

18

19        This action came before the court on December 20, 2016, for hearing of plaintiff Ian

20   Mitchinson's motion for preliminary approval of class settlement and for preliminary certification

21   of the settlement class.  (Doc. No. 29.)  The motion is unopposed.  Attorneys Stuart Talley and

22   Maggie Realin appeared telephonically on behalf of plaintiff Ian Mitchinson.  Counsel for

23   defendants did not appear at the hearing.  Oral argument was heard and the motion was taken

24   under submission.  For the reasons discussed below, the court grants the motion.

25                             FACTUAL BACKGROUND

26        On September 28, 2015, plaintiff filed a class action complaint against defendants Love's

27   Travel Stops & Country Stores, Inc. ("Love's Travel"), and Love's Country Stores of California

28   ("Love's Country").  (Doc. No. 1.)  Plaintiff brings a single claim for relief, alleging failure to

                                            1

1   provide itemized wage statements in violation of California Labor Code § 226. (*Id.* at 4.)

2           The complaint alleges as follows. Defendant Love's Travel is an Oklahoma corporation

3   that oversees a chain of truck stops and convenience stores, and that serves as the parent

4   corporation for Love's Country, a California corporation. (Doc. No. 1 at 2. ¶¶ 4–5.) Plaintiff and

5   other similarly situated employees were employed by defendants. (*Id.*) During their

6   employment, plaintiff and similarly situated employees received wage statements that did not

7   indicate the address of the employer or the inclusive dates for their pay periods.

8           On September 1, 2016, the parties appeared before mediator Steve Cerveris in Los

9   Angeles, California, for mediation. (Doc. No. 29-1 at 9.) While the parties were not able to reach

10  a settlement agreement at the conclusion of the one-day mediation, the parties continued the

11  settlement dialogue with the assistance of Mr. Cerveris, and ultimately were successful in

12  reaching a settlement agreement. (*Id.*)

13          The proposed settlement agreement defines the class as "[a]ll employees of Defendant in

14  the State of California from September 28, 2014, through April 1, 2015." (Doc. No. 29-1 at 9.)

15  Plaintiff estimates that there are 430 identifiable class members. (*Id.* at 11.)

16          Under the agreement, defendants will make a gross payment of $290,000. (Doc. No. 29-1

17  at 12.) The agreement provides the following allocation for the payment: (i) attorneys' fees of

18  one third, or $96,666, to be paid to class counsel; (ii) litigation costs and expenses of up to

19  $17,000 to be paid to class counsel; (iii) settlement administration costs of up to $20,000 to be

20  paid to the third party administrator, ILYM Group, Inc.; (iv) class representative fees of $5,000 to

21  be paid to plaintiff in addition to plaintiff's entitlement as a class member; (v) the remaining

22  funds ("net settlement amount") of approximately $151,334 to be paid to class members

23  submitting claims. (*Id.*)

24          The settlement is non-reversionary, and the funds for any settlement checks that remain

25  uncashed for more than 180 calendar days after mailing will be paid to the California Department

26  of Labor Standards Enforcement Unpaid Wage Fund with an identification of the participating

27  class member. (*Id.* at 9–10.)

28  /////

On December 1, 2016, plaintiff filed the instant unopposed motion for preliminary approval of class action settlement. (Doc. No. 29.) Plaintiff seeks an order: (i) conditionally certifying the class and appointing plaintiff as the class representative and plaintiff's counsel as class counsel; (ii) approving the class Settlement Agreement; (iii) approving the form and method of service; (iv) directing that class notice be sent to proposed class members; and (v) setting a hearing date on final settlement approval. (*Id.*)

<u>LEGAL STANDARD</u>

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent class members, Rule 23(e) of the Federal Rules of Civil Procedure requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946. However, it has been recognized that when parties seek approval of a settlement agreement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Bluetooth*, 654 F.3d at 946. Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

When parties seek class certification only for purposes of settlement, Rule 23 "demand[s] undiluted, even heightened, attention" to the certification requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The district court must examine the propriety of certification under Rule 23 both at this preliminary stage and at a later fairness hearing. *See, e.g.*, *Ogbuehi v. Comcast*, 303 F.R.D. 337, 344 (E.D. Cal. Oct. 2, 2014); *West v. Circle K Stores, Inc.*, No. 04-cv-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).

Review of a proposed class action settlement ordinarily involves two hearings. *See* Manual for Complex Litigation (4th) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. If the court makes a preliminary

3

determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties

are directed to prepare the notice of certification and proposed settlement to the class members.

*Id.* (noting that if the parties move for both class certification and preliminary approval, the

certification hearing and preliminary fairness evaluation can usually be combined).  Second, the

court holds a final fairness hearing to determine whether to approve the settlement.  *Id.*; *see also*

*Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

Here, the parties move for preliminary approval of a class settlement and preliminary class

certification.  Though Rule 23 does not explicitly provide for such a procedure, federal courts

generally find preliminary approval of settlement and notice to the proposed class appropriate if

the proposed settlement "appears to be the product of serious, informed, non-collusive

negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to

class representatives or segments of the class, and falls with the range of possible approval."

*Lounibos v. Keypoint Gov't Solutions Inc.*, No. 12-00636, 2014 WL 558675, at *5 (N.D. Cal.

Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal.

2007)); Newberg on Class Actions § 13:13 (5th ed. 2011); *see also Dearauju v. Regis Corp.*, Nos.

2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016)

("Rule 23 provides no guidance, and actually foresees no procedure, but federal courts have

generally adopted [the process of preliminarily certifying a settlement class].").

<u>ANALYSIS</u>

**I.      Class Certification under Rule 23(c)(1)**

Plaintiff seeks preliminary certification of the proposed settlement class under Federal

Civil Procedure Rule 23(c)(1).

Under Rule 23(c)(1), courts must determine by order whether an action should be

maintained as a class action "[a]t an early practicable time after a person sues or is sued as a class

representative."  Fed. R. Civ. P. 23(c)(1).  Though the parties in this case have stipulated that a

settlement class exists, the court must independently consider whether the proposed class meets

/////

/////

4

1  the requirements of Rule 23 both at this stage and at the later fairness hearing.[1]  *See Pointer v.*

2  *Bank of Am. Nat'l Assoc.*, No. 2:14-cv-00525-KJM-CKD, 2016 WL 696582, at *3 (E.D. Cal. Feb.

3  22, 2016) (citing *Amchem Prods., Inc.*, 521 U.S. at 622).

4       Certification requires satisfaction of the pre-requisites of Rule 23(a) and (b).  *Id.*  As noted

5  above, courts analyzing a motion to certify a settlement class must pay "undiluted, even

6  heightened attention" to Rule 23 requirements.  *See Amchem*, 521 U.S. at 620, n.16.  A thorough

7  Rule 23 analysis is especially important where a motion to certify a settlement class is unopposed,

8  because in such circumstances "[t]here is no advocate to critique the proposal on behalf of absent

9  class members."  *Kakani v. Oracle Corp.*, No. 06-06493, 2007 WL 1793774, at *1 (N.D. Cal.

10  June 19, 2007).  "The problem is greater at this preliminary approval stage, where objectors are

11  unlikely to have already appeared."  *Pointer*, 2016 WL 696582, at *4.

12       On a motion for preliminary approval, plaintiff bears the burden of persuasion that the

13  proposed class satisfies Rule 23 requirements.  Even at the preliminary stage, "[a] court that is not

14  satisfied that the requirements of Rule 23 have been met should refuse certification until they

15  have been met."  Advisory Committee 2003 Note on Fed. R. Civ. P. 23(c)(1).

16  /////

17  /////

---

18  [1] The 2003 Amendments to Federal Civil Procedure Rule 23 eliminated the provision stating that

19  class certification orders "may be conditional," and circuit courts have subsequently reached
   different conclusions about the continued viability of conditional or preliminary certification of

20  settlement classes under the amended rule.  *Compare Wachtel ex rel. Jesse v. Guardian Life Ins.
   Co. of America*, 453 F.3d 179, 186 n.8 (3d Cir. 2006) ("[T]he 2003 amendments to the Rule

21  eliminated so-called "conditional" certifications—formerly available under Rule 23(c)(1)(C)");
   *with Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding that

22  "conditional certification survives the 2003 amendment to Rule 23(c)(1)").  In the absence of

23  Ninth Circuit guidance on the issue, this court will not depart from the procedure commonly
   employed by district courts in this circuit of certifying settlement classes on a preliminary basis

24  for settlement purposes, and deferring final class certification until after the fairness hearing.  *See
   Denney*, 443 F.3d at 269 (noting that federal district courts "continue to employ this practice,"

25  and that the process of "preliminary" certification is endorsed by the Manual for Complex
   Litigation and Moore's Federal Practice).  Before granting preliminary certification, the court

26  nonetheless must carry out a searching, rather than a cursory, Rule 23 analysis.  *See Amchem

27  Prods., Inc.*, 521 U.S. at 622 (requiring "undiluted, even heightened attention [to Rule 23
   requirements] in the settlement context"); *cf. Pointer*, 2016 WL 696582, at *5 ("[D]espite the

28  Supreme Court's cautions in *Amchem* . . . a cursory approach appears the norm").

A.  <u>Rule 23(a) Requirements</u>

Rule 23(a) establishes four prerequisites for class action litigation: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation."  *See Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).  The court addresses each requirement below.

i.  *Numerosity*

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).  Courts have found the requirement satisfied when the class comprises of as few as thirty nine members, or where joining all class members would serve only to impose financial burdens and clog the court's docket.  *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. Cnty.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810); *In re Itel Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981).

Plaintiff estimates based on the defendants' personnel and payroll records that the potential class consists of 430 members.  (Doc. No. 29-1 at 16.)  This is sufficient to satisfy the numerosity requirement of Rule 23(a)(1).

i.  *Commonality*

Rule 23(a) also requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To satisfy the commonality requirement, the class representatives must demonstrate that common points of facts and law will drive or resolve the litigation.  *Dukes*, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.") (internal citations omitted).   "Commonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'"  *Franco v. Ruiz Food Prods., Inc.*, No. CV 10-02354 SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)). The rule does not require all questions of law or fact to be common to every single class member.

*See Hanlon*, 150 F.3d at 1019 (noting that commonality can be found through "[t]he existence of shared legal issues with divergent factual predicates"). However, the raising of merely any common question does not suffice. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) ("[a]ny competently crafted class complaint literally raises common 'questions.'") (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–132 (2009)).

Plaintiff here presents a single question common to the proposed class: whether defendants' wage statements violated Labor Code § 226. (Doc. No. 29-1 at 16.) Federal courts have found similar types of questions concerning compliance with California Labor Code standards to meet the commonality requirements of Rule 23(a)(2). *See Rodriguez v. Kraft Foods Group, Inc.*, No. 1:14-cv-1137-LJO-EPG, 2016 WL 5844378, at *4 (E.D. Cal. Oct. 5, 2016) (finding commonality satisfied on similar grounds); *Palacios v. Penny Newman Grain*, No. 1:14-cv-01804, 2015 WL 4078135, at *4 (E.D. Cal. July 6, 2015) (same); *Clesceri v. Beach City Investigations & Protective Services, Inc.*, No. CV-10-3873-JST (RZx), 2011 WL 320998, at *5 (C.D. Cal. Jan. 27, 2011) (same). "Minor factual differences . . . do not defeat commonality." *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *3 (E.D. Cal. 2008). Accordingly, plaintiff has met the commonality prerequisite for class certification under Rule 23.

## ii. Typicality

Rule 23(a)(3) demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), abrogated on other grounds by *Johnson v. California*, 543 U.S. 499, 504–05 (2005). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868; *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010); *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). While representative claims must be "reasonably co-extensive with those of

1   absent class members," they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

2   In his motion for preliminary class certification, plaintiff contends that the typicality

3   requirement is met because the claims of proposed class members arise from defendants' uniform

4   conduct of issuing wage statements that failed to include the beginning date of a pay period and

5   the address of the employer. (Doc. No. 29-1 at 17.) Plaintiff notes that all proposed class

6   members were subject to defendants' policies concerning wage statements. (*Id.*) The court finds

7   that plaintiff's claims are reasonably co-extensive with those of absent class members, and that

8   typicality is therefore satisfied.

9                 *iii.   Adequacy of Representation*

10   The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and

11   adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of

12   this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel

13   have any conflicts of interest with other class members and (b) will the named plaintiffs and their

14   counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec.*

15   *Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020.); *see also Pierce v.*

16   *County of Orange*, 526 F.3d 1190, 1202 (9th Cir. 2008).

17   Plaintiff seeks appointment of David R. Markham of The Markham Law Firm, Stuart C.

18   Talley of Kershaw Cook & Talley, and Walter L. Haines of United Employees Law Group, as

19   class counsel. (Doc. Nos. 29-1 at 17; 29-7 at 2–3, ¶ 7.) There is nothing in the record suggesting

20   that plaintiff or counsel have any conflict of interest with other absent class members. Plaintiff's

21   claims thus appear "completely aligned with [that] of the class," and there is no conflict apparent

22   at this stage. *Collins*, 274 F.R.D. at 301. Plaintiff's attorneys are experienced class action

23   litigators, as reflected in declarations submitted with plaintiff's motion for preliminary class

24   certification. (Doc. Nos. 29-4; 29-5 at 2, ¶¶ 2–3; 29-5; 29-6 at 3, ¶ 2.) Finally, the named

25   plaintiff has been involved in the litigation process, further supporting adequacy of representation

26   (Doc. No. 29-1 at 22). *See Campbell v. PricewaterhouseCoopers,* LLP, 253 F.R.D. 586, 596

27   (E.D. Cal. 2008). The court therefore finds that plaintiff satisfies the adequacy of representation

28   requirement.

8

B. Rule 23(b)(3) Requirements

The parties here seek certification under Rule 23(b)(3).  (Doc. No. 29-1 at 16.)  Rule 23(b)(3) requires: (i) "that the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (ii) "that a class action is superior to other available method[s] for fairly and efficiently adjudicating the controversy."  The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a).  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).  The court will examine each requirement in turn.

*i. Predominance*

First, the common questions must "predominate" over any individual questions. While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022.  While Rule 23(a)(2) can be satisfied by even a single question, Rule 23(b)(3) requires convincing proof the common questions "predominate." *Amchem*, 521 U.S. at 623–24; *Hanlon*, 150 F.3d at 1022.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022; *see also Edwards v. First American Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015).

Here, plaintiff asserts that wage statements provided by defendants to class members during the applicable time period failed to list the beginning date of a pay period and the address of the employer, in violation of California Labor Code § 226.  (Doc. No. 29-1 at 18.)  Defendants deny liability, arguing that employees (i) knew the start date of a pay period, because they were paid every two weeks and would have been able to calculate their own pay periods, and (ii) knew the employer's address because it was listed on the outside of the envelope that formed part of the wage statement.  (*Id.*)  Litigation in this action thus revolves around a single, common issue— whether the wage statements provided by defendants to class members during the relevant period complied with the requirements of California Labor Code § 226.  *See generally Hanlon*, 150 F.3d

9

1   at 1022 (explaining that common questions involve a "common nucleus of facts and potential

2   legal remedies").  The predominance requirement of Rule 23(b) has therefore been met.

3                 *ii.  Superiority*

4         Rule 23(b)(3) also requires a court to find "a class action is superior to other available

5   methods for the fair adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3); *see also Edwards*,

6   798 F.3d at 1178.  In resolving the Rule 23(b)(3) superiority inquiry, "the court should consider

7   class members' interests in pursuing separate actions individually, any litigation already in

8   progress involving the same controversy, the desirability of concentrating in one forum, and

9   potential difficulties in managing the class action—although the last two considerations are not

10  relevant in the settlement context."  *Palacios v. Penny Newman Grain, Inc.*, No. 1:14-cv-01804-

11  KJM, 2015 WL 4078135, at *6 (E.D. Cal. July 6, 2016) (citing *Schiller v. David's Bridal Inc.*,

12  No. 10-0616, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012)).

13        Here, the costs of litigation would far exceed the potential recovery for each individual

14  class member.  (Doc. No. 29-1 at 18.)  There appear to be no individual actions now pending, or

15  any other impediments to managing the proposed class.  In light of these factors, a class action is

16  superior to individual resolution of the wage and hour claims of the proposed class members.  *See*

17  *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d

18  1152, 1163 (9th Cir. 2001) (finding the Federal Civil Procedure Rule 23(b)(3) superiority

19  requirement met given the evidence that potential class members' claims would not be

20  economical to litigate individually, the lack of similar pending actions, and the absence of any

21  other obstacles to managing the class).  The superiority requirement is thus satisfied here.

22  **II.     Proposed Settlement**

23        Plaintiff seeks approval of their proposed settlement agreement.  (Doc. No. 29.)  Under

24  Rule 23(e), a court may approve a class action settlement only if the settlement is fair, reasonable,

25  and adequate.  *Bluetooth*, 654 F.3d at 946.  "[P]reliminary approval of a settlement has both a

26  procedural and substantive component."  *See, e.g.*, *In re Tableware Antitrust Litigation*, 484 F.

27  Supp. 2d at 1079 (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561,

28  570 n.12 (E.D. Pa. 2001)).  In particular, preliminary approval of a settlement and notice to the

1   proposed class is appropriate if: (i) the proposed settlement appears to be the product of serious,

2   informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible

3   approval, has no obvious deficiencies, and does not improperly grant preferential treatment to

4   class representatives or segments of the class.  *Id.*; *see also Ross v. Bar None Enterprises, Inc.*,

5   No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014).  However, a

6   district court reviewing a proposed settlement is not to "reach any ultimate conclusions on the

7   contested issues of fact and law which underlie the merits of the dispute." *Chem. Bank v. City of*

8   *Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

9         A.  Procedural Adequacy

10         The first factor relevant to the court's preliminary approval of settlement addresses the

11   means by which the parties reached the proposed settlement.  *Pierce v. Rosetta Stone, Ltd.*, No. C

12   11–01283 SBA, 2013 WL 1878918, at * 4 (N.D. Cal. 2013).  The proposed settlement in the

13   instant case resulted from non-collusive negotiation, after a full day of mediation in Los Angeles,

14   California, with mediator Steve Cerveris of Cerveris Mediation Services.  (Doc. No. 29-1 at 9.)

15   The parties agreed to settlement after conducting both formal and informal discovery.  (*Id.* at 19.)

16   In particular, the parties propounded and responded to sets of written discovery; class counsel

17   reviewed and analyzed documents produced through discovery; defendants noticed plaintiff's

18   deposition, and plaintiff noticed a deposition of witnesses; and a briefing schedule and a hearing

19   was set for plaintiff's class certification motion.  (*Id.*)  Based on this information, and without any

20   sign of collusion based on the current record, the court finds the parties have sufficiently shown

21   the settlement was the product of informed, arm's length negotiations deserving of preliminary

22   approval.  *See Palacios*, 2015 WL 4078135, at *8.

23         B.  Substantive Adequacy

24         In conducting the preliminary fairness determination, the court must also consider whether

25   the settlement itself is substantively fair, reasonable, and adequate.  *See Bluetooth*, 654 F.3d at

26   945.  Several factors bear on the inquiry, including the size of the settlement award, the nature of

27   the claims released, the amount of attorneys' fees awarded, and the size of the incentive payment

28   to class representatives.  *See Hanlon*, 150 F.3d at 1026; *Villegas v. J.P. Morgan Chase & Co.*,

11

1   No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *6–7 (N.D. Cal. Nov. 21, 2012).

2                    i.   *Adequacy of the Settlement Amount*

3          To evaluate the fairness of the settlement award, the court should "compare the terms of

4   the compromise with the likely rewards of litigation."  *See Protective Comm. for Indep.*

5   *Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968).

6   "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery

7   does not per se render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Secs. Litig.*,

8   213 F.3d at 459.

9          Here, plaintiff estimates the total potential recovery against defendants by relying on

10   information provided by defendants during discovery.  (Doc. No. 29-1 at 11.)  Plaintiff asserts

11   that there were collectively 9,180 pay periods for the 430 potential class members during the

12   course of the one year limitations period.  (*Id.*)  Plaintiff then calculates the total potential

13   recovery of the proposed class by assuming a penalty of $50 per pay period per class member,[2]

14   and multiplying the penalty amount times the 9,180 pay period amount, resulting in a total of

15   approximately $459,000.[3]  (*Id.* at 12.)  Based on this projected amount, plaintiff argues that the

16   $290,000 proposed gross settlement amount represents approximately 63% of defendants' total

17   potential liability.  (*Id.*)  While plaintiff has not provided specific information about the strength

18   of his case or the risk, expense, complexity, and likely duration of further litigation, he does assert

19   that the settlement is ultimately reasonable in light of the risks of further legal proceedings.  (Doc.

20   No. 29-1 at 19–20.)

21   

22   [2]  The penalty for an initial violation of California Labor Code § 226(e) is fifty dollars, while the
penalty for subsequent violations is one hundred dollars.  Cal.  Labor  Code § 226(e).  Subsequent

23   violations under Labor Code § 226(e) only occur once an employer has notice of the violation.
*See Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008) ("Until the employer has

24   been notified that it is violating a Labor Code provision . . . the employer cannot be presumed to
be aware that its continuing underpayment of employees is a 'violation' subject to penalties.").  In

25   his motion for preliminary approval of class action settlement, plaintiff notes that defendants were
placed on notice of their labor code violations by April 2015.  (Doc. No. 29-2 at 4, ¶ 9.)  Plaintiff

26   thus estimates defendants' total potential liability under § 226 by using the penalty rate of fifty
dollars.  (*Id.*)

27   

28   [3] The product of 9,180 and 50 is 458,500.

12

1    The court finds, based on the information provided by plaintiff in his moving papers, that

2    the settlement award in this case appears to be fair and reasonable.  However, counsel is advised

3    that more information will be required at the final approval stage in order for the court to

4    ascertain whether the settlement amount is in fact reasonable in light of the risks implicated by

5    further litigation.  *Pointer*, 2016 WL 696582, at *12 ("It has been remarked that the district court

6    takes on the role of fiduciary for absent class members, or that of a skeptical client, who critically

7    examines the settlement's terms and implementation.") (citation omitted).

8              i.    *Attorneys' Fees*

9    When a negotiated class action settlement includes an award of attorneys' fees, the fee

10   award must be evaluated in the overall context of the settlement.  *See Knisley v. Network Assocs.*,

11   312 F.3d 1123, 1126 (9th Cir. 2002).  At the same time, the court "ha[s] an independent

12   obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties

13   have already agreed to an amount."  *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental

14   Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999).  Where, as here, fees are to be paid

15   from a common fund, the relationship between the class members and class counsel "turns

16   adversarial."  *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994 (9th Cir.

17   2010) (quoting *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir.

18   1994)).  As a result, the district court must assume a fiduciary role for the class members in

19   evaluating a request for an award of attorney fees from the common fund.  *Id.*; *Rodriguez v. W.

20   Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

21   The Ninth Circuit has approved two methods for determining attorneys' fees in such cases

22   where the attorneys' fee award is taken from the common fund set aside for the entire settlement:

23   the "percentage of the fund" method and the "lodestar" method.  *Vizcaino v. Microsoft Corp.*, 290

24   F.3d 1043, 1047 (9th Cir. 2002) (citation omitted).  The district court retains discretion in

25   common fund cases to choose either method.  *Id.*; *Vu*, 2016 WL 6211308, at *5.  Under either

26   approach, "[r]easonableness is the goal, and mechanical or formulaic application of either

27   method, where it yields an unreasonable result, can be an abuse of discretion."  *Fischel v.

28   Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *Id.*  In the Ninth Circuit, a twenty-five percent award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure upwards or downwards if the record shows "special circumstances justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation marks omitted).  The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942.

Plaintiff here brings a single state law claim, and under California law "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted).  The court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001).  The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  The Ninth Circuit has recommended that district courts apply one method but cross-check the appropriateness of the amount by employing the other as well. *See Bluetooth*, 654 F.3d at 944.

Here, plaintiff seeks attorneys' fees of 30% of the gross settlement amount, a total of $96,666.  (Doc. No. 29-1 at 12.)  Plaintiff provides no explanation as to why the court should depart from the twenty-five percent benchmark applicable in this circuit, but indicates in his

1   motion that counsel ultimately intends to provide the court with the lodestar amount.  Finding the

2   percentage requested by plaintiff not unreasonable as an upper bound, the court approves the

3   attorneys' fee request on a preliminary basis.  *See Vizcaino*, 290 F.3d at 1047 (observing that

4   percentage awards of between twenty and thirty percent are common); *In re Activision Sec. Litig.*,

5   723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses

6   that nearly all common fund awards range around 30% even after thorough application of either

7   the lodestar or twelve-factor method.").  In connection with the final fairness hearing, however,

8   the court will cross check with the lodestar amount based upon counsels' submission to determine

9   whether the above-benchmark percentage is appropriate in this case.  *See Powers v. Eichen*, 229

10   F.3d 1249, 1256–57 (9th Cir. 2000) (noting that an explanation is necessary when the district

11   court departs from the twenty-five percent benchmark).

12              i.   *Claim Form's Release*

13          As part of the settlement, plaintiff and members of the proposed class who have not opted

14   out of the settlement agree "to fully, finally, and forever settle, compromise, and discharge all

15   disputes and claims which exist between them arising from the factual allegations that underlie

16   the Lawsuit" in exchange for payment of $290,000.  (Doc. No. 29-3 at 4, ¶ 6.)  Altogether, these

17   released claims track those advanced by plaintiff in the action and the settlement does not release

18   unrelated claims that class members may have against defendants.  *See Williams v. Costco*

19   *Wholesale Corp.*, 2010 WL 761122, at *2, 6 (S.D. Cal. Mar. 4, 2010) (finding a release with

20   similar language to be fair and reasonable); *cf. Bond v. Ferguson Enter., Inc.*, No. 1:09-cv-01662-

21   OWW-MJS, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) ("This form of release is

22   overbroad by arguably releasing all unrelated claims up to the date of the Agreement.").

23              ii.   *Treatment of Class Representatives*

24          The settlement agreement provides for a class representative payment of $5,000.  (Doc.

25   No. 29-1 at 22.)

26          At its discretion, a district court may award incentive payments to named plaintiffs in

27   class action cases.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  The

28   purpose of incentive awards is to "compensate class representatives for work done on behalf of

the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59.

To justify an incentive award, a class representative must present "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Such incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant reputational risk by bringing suit against their former employers. *Rodriguez*, 563 F.3d at 958–59.

The Ninth Circuit has emphasized that "district courts must be vigilant in scrutinizing all incentive awards." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted). In particular, district courts have declined to approve incentive awards that represent an unreasonably high proportion of the overall settlement amount, or that are disproportionate relative to the recovery of other class members. *See Ontiveros*, 303 F.R.D. at 365–66; *see also Ko v. Natura Pet Prods., Inc.*, Civ. No. 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the incentive award to $5,000); *Wolph v. Acer America Corporation*, No. C 09–01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing the incentive award to $2,000 where class representatives did not demonstrate great risk to finances or reputation in bringing the class action). Courts have reasoned that overcompensation of class representatives could encourage collusion at the settlement stage of class actions by causing a divergence between the interests of the named plaintiff and the absent class members, thus jeopardizing adequacy of class representatives. *See Staton*, 327 F.3d at 977–78; *see also Radcliffe*, 715 F.3d at 1165 (noting that unreasonably high incentive awards can destroy adequacy of class representatives).

Here, the proposed settlement agreement provides an enhancement award of $5,000 to class representative Ian Mitchinson, an amount that represents approximately 2% of the gross

16

settlement fund.  (Doc. No. 29-1 at 22.)  The average settlement share per class member is $352,

based on plaintiff's estimate of a $151,334 net settlement amount and the potential class size of

430 employees.  Plaintiff argues that the proposed $5,000 incentive award is reasonable in light of

plaintiff's efforts during in the litigation process.  (*Id.*)  In particular, counsel notes that plaintiff

"assisted investigation, participated in telephone conferences with counsel, offered input,

provided and reviewed documents and pleadings, remained on-call during the Parties' all-day

mediation, and reviewed and approved the Settlement Agreement."  (*Id.*)  Plaintiff also indicates

that he will ultimately submit a declaration detailing his involvement in this action.  (*Id.* at 22

n.6.)

As noted by plaintiff in the instant motion, district courts in this circuit have recognized a

$5,000 award to be "presumptively reasonable."  *See Deatrick v. Securitas Security Services USA,*

*Inc.*, No. 13-cv-05016-JST, 2016 WL 5394016 (N.D. Cal. Sept. 27, 2016).  The court thus finds

that the incentive award proposed by the parties is not excessive for purposes of preliminary

approval.  During the final fairness review, the court will determine whether the requested

incentive award is appropriate in light of "the proportion of the payments relative to the

settlement amount," "the size of the payment," "the actions the plaintiff has taken to protect the

interests of the class, the degree to which the class has benefitted from those actions," "the

amount of time and effort the plaintiff expended in pursuing the litigation," and any "reasonable

fears of workplace retaliation."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also*

*Deatrick*, 2016 WL 5394016, at *8 (finding that while $5,000 was a presumptively reasonable

incentive award in the Ninth Circuit, such an award in that case was not warranted because

plaintiff did not offer details regarding the actions the plaintiff had taken to protect the interests of

the class).

### III.    Proposed Class Notice and Administration

For proposed settlements under Rule 23, "the court must direct notice in a reasonable

manner to all class members who would be bound by the proposal.  Fed. R. Civ. P. 23(e)(1); *see*

*also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement

under Rule 23(e).").  A class action settlement notice "is satisfactory if it generally describes the

17

terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

Here, plaintiff's proposed notice describes the terms of the settlement, informs the class of the attorneys' fee amount, provides information concerning the time, place, and date of the final approval hearing, and informs absent class members that they may enter an appearance through counsel. (Doc. No. 29-3 at 19–21.) It also notifies absent class members about how they may object to the proposed settlement or opt out, and provides for mail delivery. (*Id.*)

Additionally, plaintiff has submitted the following implementation schedule:

| Date | Event |
| --- | --- |
| No more than ten business days after the court grants preliminary approval | Last day for defendant to provide class data list to claims administrator |
| No more than ten business days after receipt of class data lists by claims administrator | Last day for claims administrator to mail and email notice to class members |
| No more than forty five days after mailing of notice | Last day for requests for exclusion and notice of objection to be submitted to claims administrator |
| No less than fourteen days prior to the expiration of the class members' deadline to object to the settlement | Last day for class counsel to file plaintiffs' motion for attorneys' fees and costs and class representatives' enhancement awards |
| No later than March 21, 2017, Twenty eight days before final approval hearing | Last day for class counsel to file plaintiffs' motion for final approval of class action settlement |
| April 18, 2017 at 9:30 a.m. | Hearing on plaintiff's motion for final approval of class action settlement and motion for attorneys' fees and costs and class representatives' enhancement awards |

18

The court finds that the notice and the manner of notice proposed by plaintiff meets the requirements of Federal Civil Procedure Rule 23(c)(2)(B) and that the proposed mail delivery is also appropriate in these circumstances.

CONCLUSION

For the reasons stated above:

1.  Preliminary class certification is approved;

2.  Plaintiff's class counsel are appointed as class representatives;

3.  The proposed form of notice and the claim form conforms with Federal Rule of Civil Procedure 23 and are approved;

4.  ILYM Group, Inc. is approved as claims administrator;

5.  The proposed settlement is approved on a preliminary basis as fair and adequate;

6.  The hearing for final approval of the proposed settlement is set for April 18, 2017, at 9:30 a.m.; and

7.  The proposed settlement implementation schedule is adopted and plaintiff's counsel are directed to submit a proposed order for the court's consideration setting calendar dates in accordance with that schedule now that this order has issued.

IT IS SO ORDERED.

Dated:  __December 22, 2016__          _____

UNITED STATES DISTRICT JUDGE