UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAN MITCHINSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LOVE'S TRAVEL STOPS & COUNTRY STORES, INC., an Oklahoma corporation, and LOVE'S COUNTRY STORES OF CALIFORNIA, a California corporation,<br><br>Defendants. | No. 1:15-cv-01474-DAD-BAM<br><br>ORDER GRANTING PLAINTIFF'S MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES<br><br>(Doc. Nos. 37–38.) |

This action came before the court on April 18, 2017, for hearing of plaintiff Ian Mitchinson's motion for final approval of class settlement and motion for attorneys' fees. (Doc. Nos. 37–38.) The motions are unopposed. Attorneys Stuart Talley and Maggie Realin appeared on behalf of plaintiff Ian Mitchinson. Attorney Chris Truxler appeared on behalf of defendants Love's Travel Stops & Country Stores, Inc., and Love's Country Stores of California. Oral argument was heard at that time and the motions were taken under submission. For the reasons discussed below, the court will grant plaintiff's motions.

## FACTUAL BACKGROUND

On September 28, 2015, plaintiff filed a class action complaint against defendants Love's Travel Stops & Country Stores, Inc. ("Love's Travel"), and Love's Country Stores of California

1

("Love's Country").  (Doc. No. 1.)  Plaintiff brings a single claim for relief, alleging failure to provide itemized wage statements in violation of California Labor Code § 226.  (*Id.* at 4.)

In his complaint, plaintiff alleges as follows.  Defendant Love's Travel is an Oklahoma corporation that oversees a chain of truck stops and convenience stores, and that forms the parent corporation for Love's Country, a California corporation.  (*Id.* at 2, ¶¶ 4–5.)  Plaintiff and other similarly situated employees were employed by defendants.  (*Id.*)  While employed with defendants, plaintiff and other employees received wage statements that failed to indicate the address of the employer or the inclusive dates for their pay periods.  (*Id.* at 3–4, ¶¶ 11–12.)

On September 1, 2016, the parties appeared before mediator Steve Cerveris in Los Angeles, California, for mediation.  (Doc. No. 38-1 at 8.)  While the parties were not able to reach a settlement agreement at the conclusion of the one-day mediation, the parties continued the settlement dialogue with the aid of Mr. Cerveris, and ultimately reached an agreement to settle. (*Id.*)

On December 22, 2016, the court granted plaintiff's motion for preliminary approval of the class action settlement and preliminary class certification.  (Doc. No. 34.)  In granting the plaintiff's motion, the court preliminarily certified the proposed class of "[a]ll employees of Defendant in the State of California from September 28, 2014, through April 1, 2015."  (Doc. No. 34 at 2.)  In addition, the court (i) appointed plaintiff Ian Mitchinson as class representative; (ii) appointed Ilym Group, Inc. as claims administrator; (iii) appointed plaintiff's class counsel as class representatives; and (iv) approved the proposed notice to class members.  (*Id.* at 19.)

Class notice was mailed to the settlement class on January 24, 2017.  (Doc. No. 38-1 at 8.) The opt-out and objection period closed on March 10, 2017.  (Doc. No. 38-2 at 4, ¶ 12.)  Of the 364 class members, two class members submitted opt-out requests, and no class members objected to the settlement.  (*Id.*)

On February 23, 2017, plaintiff filed the instant motion for approval of attorneys' fees and costs and for plaintiff's service enhancement.  (Doc. No. 37.)  On March 21, 2017, plaintiff filed their unopposed motion for final approval of class action settlement.  (Doc. No. 38.)

/////

2

The parties now request that the court confirm certification of the proposed settlement class and approve the terms of the settlement agreement. (Doc. Nos. 37–38.) Under the agreement, defendants will make a gross payment of $290,000. (Doc. No. 38-1 at 9.) The agreement provides the following allocation for payment: (i) attorneys' fees of one third, or $96,666.67 to be paid to class counsel; (ii) litigation costs and expenses of up to $17,000 be paid to class counsel; (iii) settlement administration costs of up to $14,500 to be paid to the third party administrator, Ilym Group, Inc.; (iv) class representative fees of $5,000 to be paid to plaintiff in addition to plaintiff's entitlement as a class member; (v) the remaining funds ("net settlement amount") of approximately $156,834 to be paid to class members. (Doc. No. 38-2 at 4, ¶ 15.)

The settlement is non-reversionary, and class members need not submit a claim to receive payment. (Doc. No. 38-1 at 6.) The funds for any settlement checks that remain uncashed for more than 180 calendar days after mailing will be paid to the California Department of Labor Standards Enforcement Unpaid Wage Fund with an identification of the corresponding class member. (*Id.* at 9.)

After conducting the final fairness hearing and carefully considering the terms of the settlement, the court now addresses whether the proposed settlement is fair, reasonable, and adequate; and whether class counsel's request for attorneys' fees and costs should be granted.

## LEGAL STANDARD

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent class members, Rule 23(e) of the Federal Rules of Civil Procedure requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946. However, it has been recognized that when parties seek approval of a settlement agreement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Bluetooth*, 654 F.3d at 946. Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is

normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

When parties seek class certification only for purposes of settlement, Rule 23 "demand[s] undiluted, even heightened, attention" to the certification requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The district court must examine the propriety of certification under Rule 23 both at this preliminary stage and at a later fairness hearing. *See, e.g.*, *Ogbuehi v. Comcast*, 303 F.R.D. 337, 344 (E.D. Cal. Oct. 2, 2014); *West v. Circle K Stores, Inc.*, No. 04-cv-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).

Review of a proposed class action settlement ordinarily involves two hearings. *See* Manual for Complex Litigation (4th) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. *Id.* If the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Second, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

Here, the parties now move for final approval of the class action settlement..

ANALYSIS

**I.     Final Certification of the Settlement Class**

The court previously certified the proposed settlement class on a preliminary basis. (Doc. No. 34 at 4–10.) In that order, the court determined that based on the evidence before the court at that time, the requirements of Federal Civil Procedure Rule 23(a) and (b) had been met. Accordingly, the court will not repeat that analysis here. *See Taylor v. FedEx Freight, Inc.*, No. 1:13-cv-01137-DAD-BAM, 2016 WL 6038949, at *2 (E.D. Cal. Oct. 13, 2016); *Harris v. Vector Mktg.*, No. C–08–5198, 2012 WL 381202, at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on

whether the proposed settlement is fair, adequate, and reasonable"); *cf. Emmons v. Quest Diagnostics Clinical Lab., Inc.*, No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018, at *2 (E.D. Cal. Feb. 27, 2017) (revisiting certification analysis on plaintiff's motion for final approval of class action settlement because the court had expressed reservations about certification in its order granting preliminary approval of settlement). The court therefore certifies the proposed settlement class.

## II. Final Approval of the Settlement

A class action may be settled only with the court's approval. Fed. R. Civ. P. 23(e). "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982)); *see also Lane*, 696 F.3d at 818–19. Having already completed a preliminary examination of the agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits. *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants and their strategies, positions, and proof." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1026).

To determine whether a settlement is "fair, reasonable, and adequate" under Federal Civil Procedure Rule 23(e), the court is to consider a number of factors, including (i) the strength of the

5

plaintiffs' case; (ii) the risk, expense, complexity, and likely duration of further litigation; (iii) the risk of maintaining class action status throughout the trial; (iv) the amount offered in settlement; (v) the extent of discovery completed and the stage of the proceedings; (vi) the experience and views of counsel; (vii) the presence of a governmental participant; and (viii) the reaction of class members to the proposed settlement. *See Churchill Vill. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F3d at 1026); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (noting that not all factors will apply to every class action settlement, and that certain factors may predominate depending on the nature of the case). The court will also consider the procedure by which the parties arrived at the settlement. *See Manual for Complex Litigation (Fourth)* § 21.6 (2004); *see also In re Tableware Antitrust Litig.*, No. C-04-3514 VRW, 2007 WL 4219394, at *2 (N.D. Cal. Nov. 28, 2007).

**1. Strength of Plaintiff's Case**

When assessing the strength of plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The court cannot reach such a conclusion because evidence has not been fully presented. *Id.* Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.*

While plaintiff asserts that he is confident in the strength of his case, he acknowledges risks inherent in further litigation of this action. (Doc. No. 38-1 at 14–15.) In particular, plaintiff notes that a jury could find that defendant's violations of California Labor Code § 226 did not result in injury to its employees because those employees were able to determine the dates of the pay period by looking at the "period end" date on their wage statement and calculating one week back. (*Id.* at 14.) Plaintiff concludes that the challenge of demonstrating injury weighs in favor of settlement. (*Id.*)

The court finds that consideration of this factor favors approving the settlement.

/////

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation, and Risk of Maintaining Class Action Status Through Trial

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). As a result, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain results." *Johnson v. Shaffer*, No. 2:12-cv-1059 KJM AC P, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 09–00704, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)).

Here, both parties agree that there are risks associated with continued litigation of this action. (Doc. No. 38-1 at 15–16.) Plaintiff faces risks associated with decertification, liability, and damages. (*Id.*) Defendant faces the risk that the certified class could recover on its claims if the case went to trial. (*Id.*) Settlement ultimately allows the parties to avoid the expense of further discovery, dispositive motion filings, trial, and possible subsequent appeals. Accordingly, the court finds that the actual recovery through settlement confers substantial benefits on the class that outweigh the potential recovery that could have been obtained through full adjudication of the action.

### 3. Settlement Amount

Generally, in evaluating the fairness of a settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir.1982). .

Here, as noted above, the total proposed settlement amount is $290,000, with approximately $96,667 allocated for attorneys' fees, up to $17,000 for attorney costs, $14,500 for the cost of administration of the settlement, $5,000 for the class representative, and $156,834 for

the net settlement fund. (Doc. No. 38-2 at 4, ¶ 15.) Individual payouts will total up to $7,042, with the average award estimated to be $433. (Doc. Nos. 38-1 at 19.) Plaintiff represents that the gross settlement amount is over 63% of defendant's maximum liability for violations of California Labor Code § 226. (*Id.* at 16.)

In light of the uncertainties involved in litigating this action, the court concludes that the settlement amount in this case is reasonable. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080 ("To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."); *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 336 (D. N.J. 2002) (approving settlement representing less than two percent of the maximum possible recovery).

### 4. Extent of Discovery Completed and the Stage of the Proceedings

"In the context of class action settlement, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)). Approval of a class action settlement thus "is proper as long as discovery allowed the parties to form a clear view of the strength and weaknesses of their case." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

Here, the settlement was reached after informed, arm's length negotiations between the parties. (Doc. No. 38-1 at 18.) Both parties conducted investigation and discovery allowing them to assess the strengths and weaknesses of their case. (*Id.* at 17–18.) In particular, plaintiff propounded interrogatories and document requests on defendants, defendants noticed plaintiff's deposition, plaintiff noticed a deposition of defendants' witnesses, both parties produced documents, and the parties conducted several telephonic conferences regarding discovery. (*Id.* at 18.)

The court concludes that consideration of this factor ultimately weighs in favor of approving the settlement agreement.

/////

**5. Experience and Views of Counsel;**

Plaintiff's attorneys are experienced in handling class action and labor law litigation. (Doc. No. 28-1 at 18–19.) In the prior order granting preliminary approval of the class action settlement, the court found that plaintiff and class counsel adequately represented the class, and noted that plaintiff's counsel had provided declarations explaining their educational backgrounds and their prior experience litigating class action cases in federal and state courts. (Doc. No. 34 at 8.) Plaintiff's counsel attest in their motion for final approval of settlement that they believe this settlement affords class members substantial benefits. (*Id.* at 19.) In light of the experience of counsel and their views, this factor too favors approving the settlement. *See Pointer v. Bank of Am., N.A.*, No. 2:14-CV-00525-KJM-CKD, 2016 WL 7404759, at *12 (E.D. Cal. Dec. 21, 2016).

**6. Presence of a Governmental Participant;**

Because there are no separate governmental participants involved in the action, this factor is neutral as to the court's analysis of the settlement agreement. *See Shaffer*, 2016 WL 3027744, at *5.

**7. Reaction of Class to the Proposed Settlement**

The absence of objections to a proposed class action settlement supports that the settlement is fair, reasonable, and adequate. *See National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.") (and cases cited therein); *Barcia v. Contain-A-Way, Inc.*, 3:07-cv-00938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. 2009).

In this case, the administrator undertook measures to ensure the class members' receipt of the claim packages, including performing address traces and re-mailing notices. (Doc. No. 38-1 at 20.) On January 24, 2017, notices were mailed to all 364 class members. (*Id.*) The notices advised class members of the factual and procedural background of the action, and informed them that they could request exclusion, or object to the settlement. (*Id.*) The administrator received two requests for exclusion and zero objections to the settlement. (*Id.* at 19.)

/////

1    On balance, consideration of the *Hanlon* factors weigh in favor of granting final approval
2    of the settlement in this case.

### III.   Attorneys' Fees and Costs

Plaintiff seeks approval of the attorneys' fees and class representative payment set out in the parties' settlement agreement. (Doc. No. 37.)

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *See Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (quoting *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994)). As a result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. CV 14-08822 SJO (Ex), 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a twenty-five

percent award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure upwards or downwards if the record shows "special circumstances justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation marks omitted). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942.

Here, plaintiff brings claims under California law. Previously under California law, "[t]he primary method for establishing the amount of reasonable attorney fees [was] the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003). Under that method, the court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). However, the California Supreme Court recently also endorsed the percentage of the fund method for calculating reasonable attorneys' fees. *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 573 (2016). Nonetheless, the Ninth Circuit has recommended that district courts apply one method but then cross-check the appropriateness of the amount by employing the other, as well. *See Bluetooth*, 654 F.3d at 944.

The settlement agreement here includes an award of $96,666 in attorneys' fees. (Doc. No. 37-1 at 8.) This figure represents thirty three percent of the gross settlement amount. (*Id.*) As

discussed above, class counsel has significant experience with class action litigation, and the results of the settlement, if approved, would pay a reasonable amount to each settlement class member. The class members have not filed objections to the settlement, and only two class members have opted out of the settlement class. Moreover, both parties would also face risks if the case proceeded to trial. Finally, as the court noted in its order preliminarily approving settlement, district courts in this circuit have previously approved the thirty three percent attorneys' fees amount requested by plaintiff. (Doc. No. 34 at 15.) Together, these factors support approval of the requested attorneys' fees award.

The *Lodestar* amount further supports approval of the requested attorneys' fees award. Plaintiff states that the total *Lodestar* amount is $95,350. (*Id.* at 12.) Class counsel assert they have collectively spent over 292 hours litigating the case and arranging the settlement, and attach declarations supporting this assertion. (*Id.* at 12.) Plaintiff calculates the *Lodestar* with the following hourly rates for attorneys from the Markham Law Firm: $400 for David R. Markham, $380 for Janine R. Menhennet, $225 for Maggie Realin, and $175 for Michael Morphew and Ben Travis. (*Id.* at 11.) Plaintiff also has employed an hourly rate of $400 for Walter L. Haines from the United Employees Law Group, and $380 for Stuart Talley from Kershaw, Cook & Talley. (*Id.*) Similar rates have been approved in other class actions litigated in this district by class counsel. *See Ogbbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*, No. 2:13–cv–00672–KJM–KJN, 2015 WL 3622999, at *12 (E.D. Cal. June 9, 2015) (approving a rate of $625 per hour for Mr. Haines); *Morgret v. Applus Tech., Inc.*, No. 1:13–cv–01801–JLT, 2015 WL 3466389, at *17 (E.D. Cal. June 1, 2015) (finding a rate of $380 per hour for Mr. Haines was appropriate).

Additionally, the *Lodestar* multiplier plaintiff has used to arrive at the requested attorneys' fees award is within the range of multipliers generally awarded to counsel in successful class action litigation. *See Taylor v. FedEx Freight, Inc.*, No. 1:13-cv-01137-DAD-BAM, 2016 WL 6038949, at *7 (E.D. Cal. Oct. 13, 2016) (and cases cited therein). Multipliers between 1 and 4 are "commonly found to be appropriate in complex class action cases," and plaintiff here requests

/////

12

a multiplier of 1.013. *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013); *see also Vizcaino*, 290 F.3d at 1051 n.6.

The court finds the requested fees are reasonable, and approves class counsel's motion for attorneys' fees.

### 1. Class Representative Payment

The settlement agreement provides for a class representative incentive payment of $5,000. (Doc. No. 37-1 at 21.)

At its discretion, a district court may award incentive payments to named plaintiffs in class action cases. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). The purpose of incentive awards is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59.

To justify an incentive award, a class representative must present "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Such incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant reputational risk by bringing suit against their former employers. *Rodriguez*, 563 F.3d at 958–59.

The Ninth Circuit has emphasized that "district courts must be vigilant in scrutinizing all incentive awards." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted). In particular, district courts have declined to approve incentive awards that represent an unreasonably high proportion of the overall settlement amount, or that are disproportionate relative to the recovery of other class members. *See Ontiveros*, 303 F.R.D. at 365–66; *see also Ko v. Natura Pet Prods., Inc.*, Civ. No. 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the incentive award to $5,000); *Wolph v. Acer Am. Corp.*,

No. C 09–01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing the incentive award to $2,000 where class representatives did not demonstrate great risk to finances or reputation in bringing the class action). Courts have reasoned that overcompensation of class representatives could encourage collusion at the settlement stage of class actions by causing a divergence between the interests of the named plaintiff and the absent class members, thus jeopardizing adequacy of class representatives. *See Staton*, 327 F.3d at 977–78; *see also Radcliffe*, 715 F.3d at 1165 (noting that unreasonably high incentive awards can destroy adequacy of class representatives).

In the instant motion, plaintiff argues that the proposed enhancement award of $5,000 for class representative Ian Mitchinson is warranted, based on: (i) the significant time plaintiff spent pursuing the action on behalf of the class; (ii) the stigma plaintiff will face after bringing a class action wage dispute against his employer; and (iii) the additional litigation-related risks faced by plaintiff in pursuing claims on behalf of the class. (Doc. No. 37-1 at 21–22.) Plaintiff explains that the class representative has assisted in investigation of the claims presented in this action, participated in lengthy interviews and phone conferences with counsel, searched for and provided documents to counsel, responded to discovery, prepared for depositions, reviewed documents and pleadings, remained on stand-by during mediation, and reviewed the instant settlement agreement. (*Id.* at 22.) In its prior order preliminarily approving the parties' settlement agreement, the court found that that a $5,000 incentive award was reasonable. The court now approves the requested award.

## CONCLUSION

For all of the reasons set forth above, the court:

1. Confirms certification of the proposed class for settlement purposes;
2. Confirms plaintiff's class counsel as class representatives;
3. Confirms Ilym Group, Inc. as the claim administrator;
4. Finds the terms of the proposed settlement agreement to be fair, adequate, and reasonable and to comply with Rule 23(e) of the Federal Rules of Civil Procedure;
5. Grants the motion for final approval of the class action settlement (Doc. No. 38);

6. Grants the motion for attorneys' fees (Doc. No. 37);

7. Orders that the settlement awards be made and administered in accordance with the terms of the settlement agreement to the 362 members of the settlement class who did not opt out of the settlement;

8. Orders payment of the class representative service fees to plaintiff Ian Mitchinson in the amount of $5,000 from the settlement fund;

9. Orders payment for the costs of administration to the claims administrator Ilym Group, Inc. in the amount of $14,500 from the settlement fund;

10. Orders payment for class counsel fees of $96,666 and costs up to $17,000 to be paid from the settlement as final payment for and complete satisfaction of any and all attorneys' fees and costs incurred by and/or owed to class counsel as set forth in the settlement agreement;

11. Enters this final judgment and orders that parties act in accordance with the terms in the settlement agreement;

12. Declines to maintain jurisdiction to enforce the terms of the parties' settlement agreement. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) ("[E]nforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.").

IT IS SO ORDERED.

Dated: **May 25, 2017**

                                                 UNITED STATES DISTRICT JUDGE